# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| ERICA LUNN | * |  |
|---|---|---|
| v. | * | Civil No. CCB-19-729 |
| CLERK OF THE CIRCUIT COURT FOR BALTIMORE CITY | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM**

Plaintiff Erica Lunn brought this action against defendant Clerk of the Circuit Court for Baltimore City (the "Clerk"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* Now pending is the Clerk's motion to dismiss or, in the alternative, for summary judgment. (ECF 11). The motion has been fully briefed, and no oral argument is necessary. For reasons explained below, the court will grant the motion.

## **BACKGROUND**

The following facts are uncontested.[1] From June 21, 2006, until her termination on December 27, 2016, Lunn worked in the Juvenile Division of the Clerk's Office. (Am. Compl. ¶¶ 12–13, 54). On July 6, 2016, Jeri Wilson, a manager of the Juvenile Division, reprimanded Lunn for wearing sandals, which were prohibited by the dress code. (*Id.* ¶¶ 14, 16). Lunn disagreed with the characterization of her shoes as "sandals," and the next day emailed a photo of the shoes to then-Clerk of the Court Lavinia Alexander,[2] who confirmed that the shoe in the photograph was "not considered to be a sandal." (*Id.* ¶¶ 15–16; *see also* Shoe Email, Mot. Ex. 13, ECF 11-13 at 12–15).

---

[1] The parties have a lengthy history, and the briefing contains many additional facts not necessary to resolution of the motion. The court will recite the minimum facts necessary.

[2] Alexander died on November 8, 2016, and was succeeded by Marilyn Bentley.

1

On July 7, 2016, Lunn submitted an internal complaint to Warren Hedges, an officer in the Fair Practices Department ("FPD") of the Human Resources Department of the Maryland Administrative Office of the Courts ("AOC"), alleging harassment and retaliation by her supervisor, Beverly Briscoe. (Mot. at 4, ECF 11-1; *see also* 7/7/16 AOC Complaint, Mot. Ex. 8, ECF 11-8). The AOC complaint did not mention the shoe incident. (7/7/16 AOC Complaint, Mot. Ex. 8). Lunn submitted a second AOC complaint on August 31, 2016, alleging further (non-footwear-related) mistreatment by Briscoe. (Mot. at 5; *see also* 8/31/16 AOC Complaint, Mot. Ex. 11, ECF 11-11).[3] In neither AOC complaint did Lunn describe any alleged basis for the mistreatment, but in the August 31, 2016, AOC complaint, Lunn checked the boxes for "age,"[4] "sex," and "retaliation." (*Id.*).[5]

On or about September 13, 2016, Lunn received a Corrective Action Notice ("CAN") for wearing sandals in violation of the dress code. (Mot. at 5; Opp'n at 5, ECF 16-1). According to the CAN, Briscoe saw Lunn "wearing flat strappy sandals during her working hours," and, on another occasion, "punch[] in on the time clock wearing gold flip flops." (Dress Code CAN, Mot. Ex. 10, ECF 11-10). The CAN served as a "written reprimand" and a reminder of the dress code, but imposed no further punishment. (*Id.*). On the same day, Lunn was issued a second CAN for insubordination, which resulted in a one-day suspension. (Insubordination CAN, Mot. Ex 12, ECF 11-12).

Lunn submitted a third AOC complaint on September 14, 2016, in which she described an incident where Wilson made her feel uncomfortable. (9/14/16 AOC Complaint, Mot Ex. 13,

---

[3] Lunn does not mention either the July 7, 2016, or the August 31, 2016, AOC complaints in her Amended Complaint, but discusses the AOC complaints and her reasons for filing them in her Opposition. (Opp'n at 3–5, ECF 16-1).
[4] On December 22, 2016, Lunn stated she was 35 years old. (Mot. Ex. 20, ECF 11-20).
[5] Lunn did not check any boxes in the July 7, 2016, AOC complaint. (7/7/16 AOC Complaint, Mot. Ex. 8).

2

ECF 11-13 at 2–4). Lunn stated that Wilson called her into her office to ask whether Lunn had seen another employee clock someone else in. (*Id.* at 4). In this AOC complaint, Lunn checked the box for "retaliation" (but not "sex" or "age") as the basis for the alleged mistreatment; in the statement of facts, Lunn suggested that the two CANs were issued in retaliation for not "commit[ting] to stating that [she] saw the young Lady clock the other young Lady in." (*Id.*).[6]

In October 2016, Lunn was named as a respondent in a peace order case and was summoned to a court hearing on November 7, 2016. (Am. Compl. ¶ 31). At the time, the Clerk's Office had in place a policy requiring all employees, if scheduled to appear as a party or witness in any Maryland court, to notify their supervisors about the court appearance (the "Court Appearances Policy"). (*Id.* ¶ 32). Lunn was served in the matter on October 31, 2016, in front of Juvenile Division manager James Benton, and Lunn indicated to him that "she may have to go to Court the following week." (*Id.* ¶ 40).[7] On or about November 16, 2016, Lunn was placed on administrative leave and informed that she faced termination for violating the Court Appearances Policy. (*Id.* ¶ 33).

On December 22, 2016, Lunn filed a charge of discrimination (the "First Charge") with the Maryland Commission on Civil Rights ("MCCR"),[8] alleging age discrimination, sex discrimination, and retaliation. (Am. Compl. ¶ 53; First Charge, Mot. Ex. 20, ECF 11-20). In the

---

[6] Again, Lunn does not mention the September 14, 2016, AOC complaint in her Amended Complaint, but acknowledges its existence and confirms its contents in her Opposition. (Opp'n at 5).

[7] Lunn alleges that this constituted compliance with the policy. (Am. Compl. ¶ 40). The Court Appearances Policy, however, states that "[a] Judiciary employee must notify his/her Administrative Official in writing, if able to do so, or verbally if the employee is scheduled to appear as a party or as a witness in any Maryland court[.]" (Mot. Ex. 15, ECF 11-15). The Clerk argues that Lunn's "indicat[ion] to Mr. Benton that she may have to go to Court" was not proper notification under the policy, as she did not specifically inform Benton verbally or in writing that she was scheduled to *appear as a party* in the matter. (Mot. at 8 (quoting Am. Compl. ¶ 40); *see also* Termination Statement, Mot. Ex. 2, ECF 11-2). The Termination Statement also provides that on November 3, 2016, Lunn submitted a request for leave on the date the hearing was scheduled but did not identify any reason for the leave. (Mot. Ex. 2). In her Opposition, Lunn does not contest that she did not specifically inform Benton that she was scheduled to appear as a party in the peace order. (Opp'n at 9).

[8] The parties agree that the MCCR is the appropriate local agency for submitting EEOC complaints.

3

First Charge, Lunn alleged that: (1) she was issued written discipline on or about August 15, 2016, for violations of the dress code policy, while two older (over the age of 40) employees who violated the policy were not disciplined; (2) she was issued written discipline on or about September 15, 2016, for displaying a body tattoo in violation of the dress code, while other female employees who also displayed body tattoos were not disciplined; (3) Briscoe harassed Lunn by blocking Lunn in her cubicle; (4) the September 15, 2016, discipline was in retaliation for an internal discrimination complaint Lunn made on or about September 10, 2016; and (5) Lunn was placed on administrative leave for a violation of the employee conduct policy, while a male employee who violated the same policy was not placed on administrative leave. (First Charge, Mot. Ex. 20).

Lunn was fired on December 27, 2016. (Am. Compl. ¶ 54). The stated reason for her termination was the violation of the Court Appearances Policy. (*Id.*).

On September 15, 2017, Lunn filed a second charge of discrimination with the MCCR (the "Second Charge"), alleging retaliation, but not sex or age discrimination. (Mot. Ex. 22, ECF 11-22). Specifically, Lunn alleged that her discharge on December 27, 2016, was in retaliation for filing the First Charge, as well as her various AOC complaints. (*Id.*).[9] More than 180 days later, Lunn received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). (Am. Compl. ¶ 8).

Lunn initiated suit, alleging two counts of Title VII violations: retaliation (Count I) and disparate treatment (Count II). In Count I, Lunn alleges that she was subject to sex-based retaliation for filing internal complaints and EEOC charges of discrimination. (Am. Compl. ¶¶

---

[9] Aside from mentioning that she filed a "subsequent charge with the EEOC" that was "deemed duplicative and was closed," (Am. Compl. ¶¶ 6–7), Lunn does not discuss the Second Charge in her Amended Complaint. She does, however, confirm in her Opposition that the "subsequent charge" was indeed the September 15, 2017, charge. (Opp'n at 7).

4

65–74). According to Lunn, the retaliatory conduct consisted of (1) "falsely writing her up on bogus infractions and violations," including violations of the dress code and the Court Appearances Policy; (2) her placement on administrative leave; and (3) her termination. (*Id.* ¶¶ 36, 67). In Count II, Lunn alleges that she was treated "less favorably than her male co-workers with regard to a disparately enforced dress code policy where female employees, including Lunn, were forced to parade and pirouette before their supervisors . . . to assess dress code violations." (*Id.* ¶¶ 76–77). Count II also includes the allegations that (1) the Clerk's failure to discipline male employees for dress code violations "was motivated by gender-based disfavor and animus against Plaintiff as a female," and (2) the Court Appearances Policy was enforced in a gender-based discriminatory way. (*Id.* ¶¶ 81–82).

The Clerk argues that Lunn's claims of sex discrimination in connection with the dress code policy should be dismissed under Rule 12(b)(1), as Lunn failed to administratively exhaust these claims. The Clerk argues that the remaining claims should be dismissed under Rule 12(b)(6) or, in the alternative, that the Clerk should be granted summary judgment in its favor.

## STANDARDS OF REVIEW

### I. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) "addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of his claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this

standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## II. Motion for Summary Judgment

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and

quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### I. Administrative Exhaustion

The Clerk argues that because Lunn has failed to exhaust certain administrative claims, the court is without subject matter jurisdiction to hear them. This is not quite right. Indeed, Title VII requires plaintiffs alleging discrimination to exhaust their administrative remedies by filing a charge with the EEOC prior to initiating suit. 42 U.S.C. § 2000e-5(b), (f)(1); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). But in the recent case of *Fort Bend Cty., Texas v. Davis*, the Supreme Court held that Title VII's charge filing requirement was "not of a jurisdictional cast," but rather "speak[s] to . . . a party's procedural obligations." 139 S. Ct. 1843, 1850–51 (2019). Nevertheless, the charge filing rule is mandatory, *id.* at 1851, and a plaintiff's failure to exhaust administrative remedies thus justifies a claim's dismissal. The court will thus treat the Clerk's arguments for dismissal of certain claims under Rule 12(b)(1) as arguments for dismissal under Rule 12(b)(6) and will dismiss any claim not properly exhausted through administrative channels. *See Hodge v. Walrus Oyster Ale House*, No. CV TDC-18-3845, 2019 WL 6069114, at *3 (D. Md. Nov. 15, 2019) (citation omitted).[10]

Even if a plaintiff has exhausted her administrative remedies with respect to a certain

---

[10] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

claim, "the allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Chacko*, 429 F.3d at 509 (citation, quotation marks, and brackets omitted). Accordingly, if a plaintiff's Title VII claims "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Id.* (citation and quotation marks omitted). Claims not in the EEOC charge may be raised, however, if they are "like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case[.]" *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019) (internal citation and quotation marks omitted).

### A. Retaliatory dress code discipline

The Clerk argues that Lunn has not administratively exhausted her claim that she was "falsely writ[ten] [] up on bogus infractions and violations" related to the dress code policy in retaliation for filing internal complaints. In determining whether a plaintiff has properly exhausted a claim, the court looks to the content of the EEOC charges. *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). Lunn's First Charge states, "I believe that I received the written discipline on or about September 15, 2016 placing me on administrative leave as an act of retaliation for engaging in the protected activity of reporting workplace discrimination on or about September 10, 2016." (First Charge, Mot. Ex. 20, ECF 11-20). According to Lunn, the September 15, 2016, discipline was related to her display of a body tattoo in violation of the dress code policy. (*Id.*). The First Charge does not, however, allege that Lunn was issued retaliatory written discipline relating to improper footwear. This is notable because the only alleged "bogus infractions and violations" discussed in the Amended Complaint pertain to the footwear dress code and the Court Appearances Policy.

8

EEOC charges "must be construed with utmost liberality," *Balas*, 711 F.3d at 408 (citation and quotation marks omitted), but the court cannot "read into administrative charges allegations they do not contain." *Id.* In her First Charge, Lunn specifically alleges only one instance of dress code-related retaliation: the issuance of written discipline for displaying a body tattoo. The Clerk argues that the allegations in the Amended Complaint relating to retaliatory footwear-related discipline are outside the scope of the First Charge, and notes that Lunn filed a second EEOC complaint, which also does not contain these allegations. (*See* Second Charge, Mot. Ex. 22). Lunn counters that her reference in the First Charge to the CAN issued on or about September 15, 2016, is enough, as "the CAN itself . . . makes clear the subject matter of the alleged dress code violation was footwear, and Plaintiff clearly alleges that she was retaliated against for filing a complaint . . . by receiving a CAN pertaining to dress code violation." (Opp'n at 7–8).

In light of its obligation to construe EEOC charges liberally, the court will consider Lunn's allegation in the Amended Complaint that she received retaliatory written discipline for violating the footwear policy sufficiently "like or related to allegations contained in the charge" pertaining to the body tattoo. *See Stewart*, 912 F.3d at 705. While the alleged dress code violations differ, the substance of Lunn's charge is the same: in retaliation for filing internal complaints, she was issued written discipline for violating the dress code. Indeed, the Fourth Circuit has noted that one of the "primary purposes" of Title VII's exhaustion requirement is "notice," so that the employer has "an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions." *Chacko*, 429 F.3d at 510. Here, Lunn's First Charge put her employer on notice that Lunn believed her written discipline for violating the dress code was retaliatory. Upon investigation, her employer could have connected

the dress code-related AOC complaint—which specifically discussed footwear—with the EEOC charge. (*See* 9/14/16 AOC Complaint, Mot Ex. 13). Accordingly, the court will not dismiss this claim on administrative exhaustion grounds.

B. Sexually discriminatory dress code policy enforcement

The Clerk also argues that Lunn has not administratively exhausted her claim that she was subject to sexually discriminatory enforcement of the dress code policy. Here, the court agrees. In the Amended Complaint, Lunn alleges that she and other female employees were "subjected to the humiliating practice of having to go into the manager, Mr. James Benton's, office and pirouette in front of him so that he could assess female employees from head to toe to determine if a dress code infraction occurred." (Am. Compl. ¶ 20). She also alleges, more generally, that the dress code was enforced against her and not male employees because of "gender-based disfavor and animus." (Am. Compl. ¶ 81). But these claims do not appear in either EEOC charge nor in any of Lunn's AOC complaints. The claims are also not "like or related" to other allegations in the First or Second Charge. Lunn's only dress code-related discriminatory enforcement claim appears in the First Charge, where Lunn alleges that she was subject to *age*-based discriminatory enforcement.[11] *Cf. Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("[A]ge discrimination does not necessarily flow from sex discrimination and vice versa.").[12] The claims are thus procedurally barred and will be

---

[11] In the Amended Complaint, Lunn alleges that she made her sex-based discriminatory enforcement of the dress code claim in a September 10, 2016, internal complaint. In her Opposition, however, Lunn appears to concede that no *written* record of this internal complaint exists. Instead, she states that she "met with Mr. Hedges of the FEP Office during his investigation and discussed Mr. Benton's humiliating practice of forcing women to parade and pirouette," and that she "has submitted a freedom of information act request to obtain the recordings" of her meeting with Mr. Hedges. (Opp'n at 7 n.4). Nevertheless, it is clear that Lunn's EEOC charges do not include this claim, and the court cannot find that that it was sufficiently related to the allegations in the First and Second Charge as to put her employer on notice.

[12] Lunn's Amended Complaint does not make an age discrimination claim.

10

dismissed.[13]

## II. Conversion of the Motion to Dismiss to one for Summary Judgment

The Clerk argues that Lunn's remaining claims should be dismissed for failure to state a claim or, in the alternative, that summary judgment be granted in its favor. "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (citation and quotation marks omitted). Here, however, the Clerk's arguments for dismissal rely largely on materials extrinsic to the Amended Complaint. If the court does not exclude these materials, the Clerk's motion must be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Conversion of a motion to dismiss into one for summary judgment is appropriate only when the parties have "be[en] given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*; *Zak*, 780 F.3d at 606.

In *Laughlin v. Metro. Washington Airports Auth.*, the Fourth Circuit held that Rule 12(d) conversion is permissible when the plaintiff has actual notice that the motion may be disposed of as one for summary judgment. 149 F.3d 253, 260–61 (4th Cir. 1998). The *Laughlin* court held that a plaintiff had "actual notice" where the defendant's motion was captioned as a "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment," and the plaintiff "submitted a 'Memorandum in Opposition to Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment' to which she attached supporting affidavits." *Id.* The facts here are analogous. The Clerk captions its motion, "Motion to Dismiss the First-Amended Complaint or,

---

[13] It is unclear from the face of the Amended Complaint whether Lunn intended to assert her claim about Benton's behavior as a hostile work environment claim, but in her Opposition, Lunn makes several arguments suggesting that she did so intend. The court, however, will not address any hostile work environment claim relating to the alleged practice of forcing women to "pirouette," as Lunn failed to exhaust her administrative remedies.

11

in the Alternative, for Summary Judgment," and Lunn's response is captioned, "Plaintiff's Opposition to Defendant's Motion to Dismiss First-Amended Complaint or, in the Alternative, for Summary Judgment." In her Opposition, Lunn engages with facts set forth in the Clerk's motion that were not in her Amended Complaint (e.g., the existence and contents of two AOC complaints), and attaches exhibits to the Opposition relating to matters outside the scope of the Amended Complaint (e.g., additional details about the peace order case, (*see* Opp'n Ex. 3, ECF 16-2)). Importantly, Lunn does not argue that the court should not treat the motion as one for summary judgment, nor did she file a motion under Rule 56(f) requesting additional discovery to adequately oppose summary judgment. *See Laughlin*, 149 F.3d at 261 (citing Fed. R. Civ. P. 56(f)). The court will thus convert the Clerk's motion to one for summary judgment and analyze Lunn's remaining claims under the Rule 56 standard.

### III. Retaliation

Lunn's remaining retaliation claims are: (1) that she was disciplined for dress code infractions in retaliation for filing internal complaints; and (2) that she was placed on administrative leave for violating the Court Appearances Policy in retaliation for filing internal complaints; and (3) that she was terminated in retaliation for filing internal complaints and the First Charge. As Lunn presents no direct evidence of retaliation, the court will assess her claims using the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citation omitted). To establish a *prima facie* case for retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *See Foster*, 787 F.3d at 250 (citation omitted). Under

the *McDonnell Douglas* framework, once a plaintiff has established a *prima facie* case, the burden then shifts to the defendant "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id.* "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." *Id.* (citation and quotation marks omitted).

### A. Dress code discipline

The Clerk argues that Lunn fails to establish a *prima facie* case that the dress code discipline was retaliatory, as there is no causal connection between the discipline and any protected activity. Specifically, the Clerk asserts that because it was not aware that Lunn had filed AOC complaints until *after* Lunn was disciplined for dress code violations, the discipline could not have been retaliatory. The evidence shows that September 13 or 15, 2016, was the last time Lunn was disciplined for dress code violations.[14] The Clerk appends to its motion a letter from FPD officer Hedges, informing then-Clerk Alexander that "Complaints have been filed by Erica Lunn . . . against Beverly Briscoe and Jeri Wilson," alleging "discrimination based on age, sex, and retaliation." (Hedges Letter, Mot. Ex. 24, ECF 11-24). The Clerk argues that the Hedges Letter, dated September 27, 2016, demonstrates that it is "chronologically impossible" for the discipline to have been retaliatory. (Mot. at 25).

At minimum, for a causal connection to exist between a protected activity and an adverse employer action, the employer must know of the protected activity. *Villa v. CavaMezze Grill,*

---

[14] In the Amended Complaint, Lunn states that she was reprimanded for violating the dress code on July 6, 2016, August 25, 2016, and received a written reprimand on September 15, 2016. (Am. Compl. ¶¶ 14, 28). The Clerk attached to its motion the written reprimand, which is internally dated both "9/13/16" and "9/15/16." (Dress Code CAN, Mot. Ex. 10). Regardless of the date discrepancy, Lunn appears to accept that the CAN attached to the Clerk's motion is, in fact, the CAN referenced in the Amended Complaint. (Opp'n at 5).

13

*LLC*, 858 F.3d 896, 901 (4th Cir. 2017) ("If an employer . . . never realized that its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware." (internal citation omitted)). The Clerk asserts that it was not aware of Lunn's internal complaints until after Lunn had been reprimanded for the dress code violations. In her Opposition, Lunn neither responds to this point nor presents any evidence suggesting that the Clerk knew of her protected activity before Alexander received Hedges's letter. The court must infer, then, that Lunn concedes the argument. *See, e.g., Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 419 (D. Md. 2015) (plaintiff's failure to respond to the defendant's arguments pointing out deficiencies of a claim constituted abandonment of that claim). Accordingly, the court will grant summary judgment in the Clerk's favor on the dress code retaliation claim.

B. Administrative leave

The Clerk argues that Lunn also fails to establish a *prima facie* case that her placement on administrative leave was retaliatory, as placement on paid administrative leave[15] pending an investigation is not an adverse employment action. Indeed, several Courts of Appeals have held that placement on paid administrative leave pending the results of an internal investigation does not constitute a materially adverse employment action within the meaning of Title VII. *See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (collecting cases). Moreover, Lunn does not respond to the Clerk's argument that her placement on administrative leave was not an adverse action. The court will thus grant summary judgment in the Clerk's favor on this claim.

---

[15] Lunn does not contest the Clerk's repeated assertions that Lunn was placed on *paid* administrative leave.

C. Termination

Assuming *arguendo* that Lunn can establish a *prima facie* case that her termination was retaliatory, the Clerk argues that the claim nevertheless fails because Lunn cannot show pretext. As required by the *McDonnell Douglas* framework, the Clerk has advanced a legitimate, non-retaliatory reason for Lunn's termination: her violation of the Court Appearances Policy. (Mot. at 29 (citing Termination Letter, Mot. Ex. 2, ECF 11-2)). Consequently, Lunn "must establish both that the employer's reason was false and that retaliation was the real reason for the challenged conduct." *See Foster*, 787 F.3d at 252 (citation, quotation marks, and brackets omitted). Lunn argues that the proffered explanation must be false and pretextual, as the Clerk "did not enforce the [Court Appearances Policy]," and has not "produced any evidence—or even proffered—that any employees even complied with the policy." (Opp'n at 25–26). But Lunn misstates the relevant standard. It is Lunn, not the Clerk, who bears "the ultimate burden of persuading the court that she has been the victim of intentional retaliation." *See Foster*, 787 F.3d at 252 (citation, quotation marks, and brackets omitted). Lunn offers no evidence of similarly situated employees whose violations of the Court Appearances Policy were known to the Clerk but who were not disciplined. First, the Clerk did not have the opportunity to discipline Adonis Johnson for violating the policy, as Johnson informed the Clerk that he had been arrested and resigned the same day. (Mot. Ex. 23, ECF 11-23).[16] Second, while Lunn's allegation that Benton violated the Court Appearances Policy is ostensibly supported by a case information search, (*see* Opp'n Ex. 10, ECF 16-10 at 3–4), Benton provided a declaration stating that "I am not the James Benton, Jr. identified in that case and have never lived at the address identified as that James Benton, Jr.'s residence," (Benton Decl. ¶ 5, Reply Ex. 2, ECF 17-2). Even if Lunn could prove that Benton

---

[16] Lunn also alleges that Johnson violated the Court Appearances Policy when he failed to report a court date in 2007, but offers no evidence that the Clerk was aware of that violation. (Opp'n at 13–14).

15

was the individual identified in the case information search, she provides no information that the Clerk was aware of the alleged violation. Third, while Lunn provides in her Opposition the names of four additional employees who allegedly violated the Court Appearances Policy, she again offers no evidence that the Clerk knew about these violations and nonetheless failed to impose discipline. (Opp'n at 13–14). Lunn thus does not carry her burden of showing that the Clerk's proffered reason for her termination was false.

Moreover, Lunn offers no evidence that retaliation was the "real" or "but-for" reason for her termination. She instead appears to argue that her termination pursuant to this policy was simply unfair. This is insufficient to sustain a claim of retaliation. *See Villa*, 858 F.3d at 900–01 ("[W]hen an employer articulates a reason for discharging the plaintiff that [Title VII] does not proscribe, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." (citation and quotation marks omitted)).[17] The court will thus grant summary judgment in the Clerk's favor on this claim.

## IV. Disparate Treatment

Lunn's remaining disparate treatment claim is that the Court Appearances Policy was enforced in a sexually discriminatory way, as two male employees also violated the policy and were not disciplined. To establish a *prima facie* disparate treatment claim under Title VII, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir.

---

[17] Lunn devotes several pages of her Opposition to arguing that she did not violate the Court Appearances Policy and/or did not know about it, and explaining her belief that the underlying peace order case was not meritorious. (Opp'n at 8–12). The court need not wade into these factual matters, as its inquiry is limited to whether Lunn's termination subject to the Court Appearances Policy was retaliatory.

16

2010) (citation omitted), *aff'd*, 566 U.S. 30 (2012).

The Clerk argues that Lunn also fails to state a *prima facie* case of disparate treatment with respect to the enforcement of the Court Appearances Policy. The court agrees. In the Amended Complaint, Lunn alleges that her termination "was motivated by gender-based disfavor" because two male employees, Johnson and Benton, also violated the Court Appearances Policy but were not disciplined or terminated. (Am. Compl. ¶¶ 82, 56–57). A *prima facie* case, however, requires more. In *Coleman v. Maryland Court of Appeals*, the Fourth Circuit held that a plaintiff failed to state a Title VII race discrimination claim where the plaintiff merely identified his Caucasian supervisor as someone who was "treated differently," without providing supporting details about the alleged disparate treatment. 626 F.3d at 190–91. According to the *Coleman* court, the claim was deficient because "the complaint fail[ed] to establish a plausible basis for believing [the African American plaintiff] and [his Caucasian supervisor] were actually similarly situated or that race was the true basis for [the plaintiff's] termination." *Id.* The same is true here. Lunn describes Johnson and Benton as "male comparators" but alleges no additional facts suggesting they were similarly situated, *see supra* Part III.C (to be similarly situated, the Clerk must have known about and failed to act on the employees' alleged violations of the Court Appearances Policy), or that the non-enforcement of the policy against them was related to their sex. Indeed, Lunn recites in her Opposition the names of several other *female* employees who she alleges violated the Court Appearances Policy but were not disciplined, (Opp'n at 13–14), which seems to cut against her argument that the policy was enforced in a sexually discriminatory manner. *Cf. White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295–96 (4th Cir. 2004) (no reasonable inference of racial discrimination in compensation where the only documentary evidence of such discrimination was that African American truck drivers had their

pay lowered by supervisors, and Caucasian truck drivers also had their pay lowered); *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 528 (D. Md. 2015) ("Conclusionary allegations that similar actions were not taken against white employees are insufficient to state a discrimination claim." (citation and quotation marks omitted)). It appears, then, that Lunn's claim consists only of the allegation that the Court Appearances Policy was enforced unfairly against her, not against her *because she was a woman*. Title VII protects only against the latter form of workplace misconduct. *Villa*, 858 F.3d at 900–01. Accordingly, summary judgment will be granted in the Clerk's favor on this claim.

## CONCLUSION

For the foregoing reasons, the Clerk's motion will be granted. A separate order follows.

3/3/20
Date

*CCB*
Catherine C. Blake
United States District Judge